In the United States District Court
for the District of Kansas

———————————

Case No. 24-cv-02219-TC

———————————

Sᴇᴀɴ Sɴᴇᴛʜᴇɴ,

*Plaintiff*

v.

Aꜱᴘʟᴜɴᴅʜ Tʀᴇᴇ Exᴘᴇʀᴛ, LLC,

*Defendant*

———————————

## MEMORANDUM AND ORDER

Sean Snethen sued his employer, Asplundh Tree Expert, LLC, alleging that Asplundh promoted a younger employee instead of him in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Doc. 1. Asplundh moved for summary judgment. Doc. 34. For the following reasons, Asplundh's motion is granted.

## I

## A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

## B

Asplundh Tree Expert, LLC is a business that clears vegetation for municipalities and utility companies. Doc. 33 at 5. Asplundh divides the areas it serves into regions, each overseen by a region manager. *Id.* at ¶ 2.a.1. Region managers report to area or regional vice presidents, who, in turn, operate groups of regions. *Id* at ¶ 2.a.2. Region managers then direct two types of employees: supervisors and regional safety supervisors. *Id.* at ¶ 2.a.3. And finally, supervisors oversee the work of general forepersons and superintendents. *Id.* at ¶ 2.a.4.

Asplundh hired Snethen in 1999 as a groundsman. Doc. 33 at ¶ 2.a.6. Other than a six-month break starting in 2004, Snethen has worked at Asplundh since he started. *See id.* at ¶¶ 2.a.5–2.a.9. In particular, he has worked in Asplundh's region that covers all of Kansas and parts of Missouri and Colorado. *Id.* at 6; Doc. 35 at ¶ 8. Asplundh has promoted Snethen three times. Doc. 33 at ¶¶ 2.a.6–2.a.9. It promoted him to foreperson in 1999, general foreperson in 2005, and to his current position as a superintendent in 2021. *Id.*; Doc. 33 at 6.

Snethen sought another promotion in February 2023. Doc. 33 at ¶¶ 2.a.12–2.a.14. Specifically, he applied for a supervisor position that opened when Asplundh promoted Scott Leonard, Snethen's then-supervisor, to region manager. *Id.* at ¶ 2.a.14; Doc. 35 at ¶ 24 n.1. Snethen

did not get the promotion. Doc. 33 at ¶ 2.a.15. Instead, Asplundh promoted another employee, Kyle Baur. *Id.* at ¶ 2.a.18. At the time of the promotion, Baur was fifty-seven years old, and Snethen was fifty-five. *Id.* at ¶¶ 2.a.5, 2.a.16. Baur then became Snethen's supervisor. *Id.* at ¶ 2.a.20.

Sometime before Baur's promotion, Snethen had a conversation with Baur and the region vice president, Ed Bradshaw. Doc. 35 at ¶ 66. Snethen had decided to advocate for better wages and benefits for the employees at Asplundh. Doc. 38 at 4, ¶ 2. It is unclear from the record exactly how that conversation played out. At some point, however, Bradshaw commented to Snethen and Baur: "[T]here's plenty of our young guns down in Oklahoma and Texas that would love to come up and take you old guys' jobs." Doc. 35 at ¶ 66; Doc. 38 at 4, ¶ 2.

In April 2023, another supervisor position opened in the Kansas region. Doc. 33 at ¶ 2.a.22. Asplundh had promoted Snethen's older brother, Paul Snethen, to region manager in a different region, so Sean Snethen applied to the supervisor position his brother had just vacated. *Id.* at ¶¶ 2.a.22–2.a.25.

A talent acquisition manager at Asplundh, Amin Cabral, referred to the plaintiff, Sean Snethen, as a "Golden Goose" candidate because "he possessed all the credentials necessary to find a higher position within Asplundh." Doc. 38 at 8, ¶ 25; Doc. 35 at ¶ 58. But again, Asplundh did not select Snethen for the promotion. *See* Doc. 33 at ¶ 2.a.26. Instead, Scott Leonard, the new region manager, made the decision to promote John Lehmann, who turned forty-five the year of his promotion. Doc. 33 at ¶¶ 2.a.26–2.a.27; Doc. 35 at ¶ 45. Snethen is ten years older than Lehmann. Doc. 33 at ¶ 2.a.5. Bradshaw ultimately approved Leonard's decision to promote Lehmann. Doc. 35 at ¶ 49. Leonard also made Lehmann Snethen's second supervisor, so he shared supervision responsibilities over Snethen with Baur. Doc. 38-3 at 40. Having two supervisors is uncommon at Asplundh. Doc. 38 at 5, ¶ 8.

Snethen takes issue with the way Leonard conducted his interview. *See* Doc. 38 at 5, ¶ 5. In particular, he asserts that Leonard—the only interviewer—failed to take the interview process seriously. *Id.* For example, Leonard did not "ask to meet in a professional space." *Id.* He did not take notes or ask questions during Snethen's interview. *Id.* And to the extent Leonard did take notes, he discarded them after the interviews. *Id.* at 6, ¶ 11. Leonard did not formally score or rank the

supervisor candidates other than mentally ranking their qualifications. *Id.* at 6, ¶ 12. Nor did Leonard review Snethen's resume or qualifications for the supervisor position. *Id.* at 5, ¶ 5.

Leonard's proffered reason for promoting Lehmann was that he had the best qualifications for the supervisor position. Doc. 35 at ¶ 45. Bradshaw confirmed that process, stating that promotion decisions are made by simply picking "the best individual for that position." Doc. 38 at 6, ¶ 14. Only one factor is considered: the candidates' job performance. *Id.* at 6, ¶ 10. Asplundh does not use any "scoring system, protocol, written policies, evaluation script, corporate training, or other criteria." *Id.*

Lehmann, the candidate Leonard chose for the promotion, started working for Asplundh in 2000, the year after Snethen started. Doc. 33 at ¶ 2.a.28. He started as an herbicide sprayer and ultimately worked his way up to regional safety supervisor in Texas. Doc. 35 at ¶¶ 30–36. He left that job to be a general foreman—a lower-ranked position—because a position opened that allowed him to return to Kansas. *Id.* at ¶ 37. Lehmann worked as a general foreman for over a decade in various locations, gaining experience in bidding and supervising multiple crews and employees. *Id.* at ¶¶ 38–40. In 2020, Lehmann returned to the regional safety supervisor role, this time in southeast Kansas. *Id.* at ¶ 43. At some point, Lehmann was certified by the International Society of Arboriculture, but that certification expired before he applied to the supervisor position. Doc. 38 at 4–6, at ¶¶ 3, 16. Leonard and Bradshaw knew Lehmann's certification had expired but still promoted him, claiming the certification was not mandatory. *Id.* at 6–7, ¶ 17.

Leonard identified three reasons he thought Lehmann was the most qualified candidate for supervisor. Doc. 35 at ¶ 46. First, Lehmann had experience in Kansas as a regional safety supervisor. *Id.* Second, he was familiar with "the Kansas property, the operations, and the personnel" in the specific region where he would be a supervisor. *Id.* Third, he had bid experience both in Kansas and elsewhere. *Id.* Leonard also believed that Lehmann performed better than Snethen during the interview. *Id.* at ¶ 47. For example, Leonard stated that "Lehmann was able to explain how he could use his background and experiences to provide effective leadership." *Id.*

After Lehmann was promoted, Leonard offered Snethen the regional safety supervisor role that Lehmann had just vacated. Doc. 35 at ¶ 52. Asplundh had offered Snethen the regional safety supervisor

role twice before, but Snethen turned it down both times. *Id.* at ¶ 56. Snethen declined this offer, too. *Id.* at ¶ 55. Had Snethen accepted, he would have received higher wages and better benefits than he does as a superintendent. *Id.* at ¶¶ 53–54. He also would have been a member of upper management. *Id.* at ¶ 51. Snethen told Asplundh's human resources department that it was not something he wanted to do at his age. *Id.* at ¶ 57. Snethen further asserts that Leonard and Bradshaw encouraged him to take lesser roles or promotions, like the regional safety supervisor position, even though they did not encourage younger employees to do the same. Doc. 38 at 5, ¶ 6.

The next month, Snethen complained to human resources about how Bradshaw treated him. Doc. 35 at ¶ 58. In particular, Snethen believed Bradshaw was attempting to block him from advancing in his career. *Id.* at ¶ 59. Snethen stated two reasons for this. One was that he heard Bradshaw had told another manager that Snethen did not have any bid experience. *Id.* The other was that Snethen believed Leonard and Bradshaw promoted Lehmann instead of him because Lehmann's brother worked for Asplundh's customer. *Id.* at ¶ 60. Bradshaw called Snethen to tell him that "at no time had he ever blocked somebody's career," *id.* at ¶ 61, and asked Snethen if he would be interested in a supervisor position in Louisiana, *id.* at ¶ 62. Snethen told Bradshaw he was not interested. *Id.* at ¶ 63.

Snethen's response to Asplundh's summary judgment motion provides additional criticisms of Asplundh. *See generally* Doc. 38. For example, Snethen asserts that Asplundh management "regularly participates in illicit activities," like omitting safety incidents or workplace injuries from reports, overcharging utility companies, permitting sexual harassment or wrongful treatment, and incorporating unfair hiring or promotion practices. *Id.* at 5, ¶ 7. Snethen also states that Leonard and Bradshaw encouraged him to take roles that would require him to partake in these illicit activities but did not encourage younger employees to do so. *Id.* at 5, ¶ 6. In addition, Snethen asserts that Asplundh deducted his bonus because of a subordinate's performance but that he was not aware of similarly situated employees who had their bonuses deducted for that reason. *Id.* at 7, ¶ 20. Finally, Snethen claims that Leonard and Bradshaw blocked a potential opportunity for him to become a supervisor in Ohio. *Id.* at 8, ¶ 26.

After filing a charge of discrimination with the Equal Employment Opportunity Commission, Doc. 35 at ¶ 68, Snethen sued Asplundh for age discrimination, Doc. 1. Snethen's claim focuses only on the

promotion Asplundh denied him in April 2023, when Asplundh promoted Lehmann to supervisor instead of him. Doc. 33 at ¶ 4.a.i. Snethen contends that Asplundh's decision violated the Age Discrimination in Employment Act by promoting Lehmann to supervisor instead of him. *Id.* (citing 29 U.S.C. § 621 *et seq.*). In particular, Snethen asserts that Asplundh treated him differently than Lehmann, the promotion process was marred by subjectivity and procedural irregularities, Asplundh demonstrated a bias against him, and Bradshaw made comments suggesting age-based animus. *See* Doc. 38 at 9–14. Asplundh moved for summary judgment, arguing that Snethen's assertions—many of them true—do not rise to the level of actionable age discrimination. *See* Doc. 35 at 11–15.

## II

Snethen asserts that he was passed over for a promotion because of his age. But even assuming Snethen demonstrated a prima facie case of age discrimination, there is no evidence that would permit a jury to conclude that Asplundh's reason for not promoting him was pretextual. Accordingly, Asplundh's motion for summary judgment is granted.

## A

The Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a). This prohibition on discrimination applies to protect "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). A plaintiff suing under the ADEA must prove that the challenged employment action was motivated by age. *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080–81 (10th Cir. 2023). While it is not necessary that age is the exclusive reason, the plaintiff seeking to survive summary judgment must produce evidence "that age was the 'but-for' cause of the employer's adverse decision." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

When a defendant seeks summary judgment on an ADEA claim based on circumstantial evidence, federal courts apply the familiar

6

*McDonnell Douglas* framework.[1] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968–69 (10th Cir. 2017). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 969. If he or she does so, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for taking its adverse action. *Id.* at 970. If the defendant satisfies its burden, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual—*i.e.*, "not the true reason for the employment decision." *Id.*

## B

Snethen contends that Asplundh denied him a promotion on the basis of his age in violation of the ADEA. Doc. 33 at ¶ 4.a.i. Even assuming Snethen set forth a prima facie case of age discrimination, he cannot show that Asplundh's legitimate, non-discriminatory reason for promoting a younger employee instead of him was pretextual.[2]

---

[1] Asplundh analyzes Snethen's claim under the *McDonnell Douglas* summary judgment framework, which applies to employment discrimination claims relying on circumstantial evidence of discrimination. Doc. 35 at 10–11. Snethen asserts that one of the decisionmaker's comments that "young guns" were waiting to take Snethen's job is direct evidence of discrimination but does not take a conclusive stance on whether the *McDonnell Douglas* framework should apply. Doc. 38 at 10–11 ("We leave it to the court to decide whether Ed Bradshaw's claim . . . is representative of circumstantial or direct evidence."). Bradshaw's comment is not related to the employment decision at issue, making it circumstantial rather than direct evidence of age discrimination. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136–37 (2000) (explaining that comments reflecting animus toward a particular group are not direct evidence of employment discrimination unless they are connected to the personnel action at issue). Accordingly, Snethen's claim is analyzed under the *McDonnell Douglas* framework.

[2] The parties dispute whether Snethen met the final element of a prima facie case of age discrimination—*i.e.*, whether Asplundh failed to promote him under circumstances giving rise to an inference of age discrimination. *Compare* Doc. 35 at 10–13, *with* Doc. 38 at 9–11. Because Snethen cannot show that Asplundh's legitimate, non-discriminatory reason for not promoting him is pretextual, it is assumed that Snethen set forth a prima facie case of age discrimination. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 n.2 (10th Cir. 1994) (taking a similar approach where prima facie issue was uncertain but it was clear there was no evidence of pretext).

**1.** The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (citation omitted); *DePaula*, 859 F.3d at 968–69. On a motion for summary judgment, a defendant need only "'articulate a reason for the [action] that is not, on its face, prohibited' and that is 'reasonably specific and clear.'" *Frappied*, 966 F.3d at 1058 (citation omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Asplundh has met that burden. Its reason is simple: It asserts Snethen "was not the most qualified candidate." Doc. 35 at 13. And it states four reasons why. *Id.* at 13–14. Lehmann, who was promoted instead of Snethen, had more familiarity with the Kansas region, more experience as a regional safety supervisor, and "significant bid experience in Kansas and on other states." *Id.* In addition, Lehmann performed better in the interview. *Id.* at 14. That is sufficient. *See Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (finding that an employer articulated a non-discriminatory reason for not promoting an employee when it specified the superior qualifications of the employee who was promoted instead); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (finding that poor performance in a job interview as compared to other candidates is a legitimate non-discriminatory reason for refusing to hire a candidate).

**2.** The burden returns to Snethen to show that the reason for his termination is pretext for discrimination. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018). A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Id.* (quoting *DePaula*, 859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1308

(10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). All facts are examined "as they appear to the person making the decision, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotation marks omitted). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

Snethen offers three primary arguments for why Asplundh's justification for not promoting him is pretextual. Doc. 38 at 11–14. But none—either individually or collectively—suggest that Asplundh's proffered reason for not promoting him constitutes pretext such that his case should proceed to trial.

*First*, Snethen points to the differential treatment between him and younger employees. Doc. 38 at 13. Snethen first makes the general assertion that "[n]o other similarly situated, younger employee has been denied a promotion and encouraged to take a lesser role as many times as he was subjected to by Scott Leonard and Ed Bradshaw." *Id.* (citing Doc. 38-5 at 37, and then citing Doc. 38-7 at 18–19).

This general assertion does not identify any proper comparator for Snethen such that it is essentially a baseless, conclusory statement. Snethen has not identified the younger employees he is referencing, nor has he supported his contention with evidence in the record. *See Lindsay v. Denver Pub. Schs.*, 88 F.4th 1323, 1329 (10th Cir. 2023) (finding a plaintiff's argument that she was treated differently than similarly situated employees without merit because the plaintiff did not identify specific employees as comparators). The deposition testimony Snethen references merely supports that Asplundh previously offered him the regional safety supervisor position but that he declined it. *See* Doc. 38-5 at 37; Doc. 38-7 at 18–19. Neither source indicates whether younger employees had the same experience or qualifications that could confirm the differential treatment Snethen is proposing. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1191 (10th Cir. 2020) (outlining that district courts are under no obligation to search the record to find uncited materials).

Then, Snethen points to Lehmann, who Asplundh promoted instead of him. Doc. 38 at 13. He argues that Asplundh promoted the younger Lehmann to supervisor even though Lehmann allowed his arboriculture certification to expire. *Id.* To succeed on his contention, Snethen must have evidence that the identified employees, that is, he

and Lehmann, were similarly situated and that Asplundh treated them differently. *See Green v. New Mexico*, 420 F.3d 1189, 1194–95 (10th Cir. 2005); *Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001) (noting that the plaintiff has the burden to show that he or she is similarly situated to the alleged comparator). Even assuming Snethen and Lehmann were similarly situated, Snethen has not presented sufficient evidence that Asplundh treated the two differently. True, Lehmann's arboriculture certification had expired, and Snethen's had not. Doc. 38 at ¶¶ 16, 18. But Snethen has not rebutted or even disputed Asplundh's evidence that maintaining such certifications was optional or that Asplundh did not consider certifications as part of its promotion process. *See* Doc. 38 at ¶ 44. He merely states that other supervisors—like Leonard himself—maintained their annual certifications. Doc. 38 at ¶ 18. *See Green*, 420 F.3d at 1196 (finding that an employer's decision to terminate a plaintiff was not pretextual where the employee did "not come forth with evidence that a similarly situated employee was treated differently").

*Second*, Snethen argues that Asplundh's decision was so infused with subjectivity and procedural irregularities as to suggest pretext. Doc. 38 at 12. This argument fails, too.

Take the subjective nature of Asplundh's promotion decision. Snethen asserts that Asplundh's decision was entirely subjective because "there was no published promotion policy, script, interview questionnaire, and/or standardized assessment for assessing applicants for potential promotion." Doc. 38 at 12. An employer's decisionmaking process may contribute to a finding of pretext where the criteria used to make the decision was "wholly subjective," *Plotke v. White*, 405 F.3d 1092, 1106 (10th Cir. 2005), or "devoid of any evidence" showing how one employee was selected over another, *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1199–1200 (10th Cir. 2008). But the Tenth Circuit has repeatedly emphasized that "*some* subjectivity is to be expected in every hiring decision." *Mauldin v. Driscoll*, 136 F.4th 984, 997 (10th Cir. 2025) (quoting *Ford*, 45 F.4th at 1218). As a result, an employer's non-discriminatory rationale for selecting one candidate over another is not pretextual so long as the employer used at least some objective criteria to make its decision. *Hinds*, 523 F.3d at 1200; *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 866 (10th Cir. 2007).

Asplundh has provided objective bases for promoting Lehmann over Snethen. Those include the candidates' respective positions at Asplundh at the time of the promotion, their knowledge of the region

where they would serve as supervisor if promoted, their bid experience, and their interview performance. Doc. 35 at ¶¶ 46–47. These criteria are objective. *See Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (finding that subjective criteria did not suggest pretext where there was evidence that the employer also used objective criteria like the specific jobs the candidates had at the company prior to the promotion); *Ford*, 45 F.4th at 1219 ("Selecting candidates based on their familiarity with an area is an objective criterion."). And the employer, exercising its business judgment, is entitled to rely on those objective differences when making hiring decisions. *See Mauldin*, 136 F.4th at 996 (quoting *Santana*, 488 F.3d at 865) (explaining that it is not a court's role "to act as a super personnel department that second guesses employers' business judgments").

Nor did Snethen argue anything to the contrary. Instead, he points to two opinions regarding his candidacy for supervisor. Doc. 38 at 12. First, he provides his own opinion that he was more qualified for the supervisor position than the candidate who Asplundh selected. *Id.* Second, he asserts that another member of management, who played no role in the promotion selection, believed he was a qualified candidate for supervisory roles. *Id.* These assertions are insufficient to establish pretext because they do not relate to or reflect the decisionmakers' intent. *See Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1196–97 (10th Cir. 2006) (noting that the decisionmaker's perception of a candidate's qualifications is the necessary focus when examining whether an employer's decision was pretextual); *Ford*, 45 F.4th at 1219 ("Importantly, an employee's own belief that she was the most qualified candidate for a position is not enough to show pretext.").

Relatedly, Snethen's assertions of procedural irregularities throughout the promotion process are without merit. *Contra* Doc. 38 at 13–14. In particular, Snethen states that Leonard "did not ask to meet in a professional space, did not ask questions during Snethen's interview, did not take notes, and did not look at Snethen's resume and qualifications for the position." Doc. 38 at ¶ 5. Assuming without deciding that these are procedural irregularities that could support a claim of pretext, they fail. While procedural irregularities during a hiring or promotion process can support an inference of pretext, *Jaramillo*, 427 F.3d at 1314–15, "there must be some evidence that the irregularity directly and uniquely disadvantaged the employee," *Markley*, 59 F.4th at 1083–84 (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1176 (10th Cir. 2013)) (emphasis and alteration omitted).

11

Snethen fails to cite any evidence that these actions directly and uniquely disadvantaged him. He merely describes an informal interview process conducted by his longtime colleague. Although he asserts that "[e]ach interview was executed differently than the next," Doc. 38 at 12, he points to nothing in the record that would support that assertion. As a result, it fails to support his claim of pretext. *See Conroy v. Vilsack*, 707 F.3d 1163, 1176 (10th Cir. 2013) (finding that procedural irregularities did not directly and uniquely disadvantage the plaintiff where the employer had discretion as to what procedures to follow).

At best, Snethen appears to complain that Leonard and Bradshaw were predisposed against him. Doc. 38 at 13. He repeatedly asserts that Leonard and Bradshaw blocked his opportunities to interview for other positions or to receive promotions. *See, e.g.*, Doc. 38 at 13. For one, Snethen does not provide any facts supporting this assertion other than his subjective beliefs. That, obviously, will not do. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (explaining that "statements of mere belief" that are not supported by personal knowledge must be disregarded at the summary judgment stage). For another, Snethen cites no evidence and makes no argument that Leonard or Bradshaw's alleged bias against him was attributable to age-related animus. Without that connection, Leonard and Bradshaw's alleged bias is immaterial to the question of pretext. *Markley*, 59 F.4th at 1086 (rejecting the argument that a supervisor's predisposition against the plaintiff was material when there was "zero evidence" that the animus was the product of an age-based bias); *Plotke*, 405 F.3d at 1108 (Tymkovich, J., concurring) ("Personal dislike does not necessarily equate with intentional discrimination.").

The only age-related fact Snethen asserts is a comment that Bradshaw made to him and another employee around his age. Doc. 38 at 14. Bradshaw stated that "all kinds of young guns are wanting to take your job." Doc. 38 at 14. For one, Bradshaw did not make the initial determination to promote Lehmann instead of Snethen; he simply approved the decision that Leonard made. Doc. 35 at ¶ 49. Snethen has not presented any evidence that Leonard shared Bradshaw's alleged age-related bias or that he even knew Bradshaw made the comment that Snethen identified. *See Dewitt v. Sw. Bell Tele. Co.*, 845 F.3d 1299, 1319 (10th Cir. 2017) (noting that the animus of a non-decisionmaker could not support pretext where the plaintiff pointed to no evidence suggesting that the decisionmaker shared, was influenced by, or had knowledge of the non-decisionmaker's animus). But even if Bradshaw

could be considered a decisionmaker, his comment is best characterized as a stray remark—i.e., an isolated or ambiguous comment that is too abstract to support a finding of discrimination. *Mauldin*, 136 F.4th at 997 (quoting *Cone*, 14 F.3d at 531). To support an inference of discrimination, Snethen must "show a nexus between the allegedly discriminatory statement[ ] and the employer's decision." *Plotke*, 405 F.3d at 1107. Bradshaw's comment, standing alone, is insufficient to show that "age actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome." *See Stone*, 210 F.3d at 1140 (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)) (finding that a supervisor's comment that it would be difficult to train the plaintiff for another position or find him a new job was too abstract so support an inference of age discrimination); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (finding that a plaintiff failed to show pretext based on his supervisor's comment that the supervisor was not as old as the plaintiff).

*Third*, Snethen asserts that Asplundh's policies and practices suggest pretext. Doc. 38 at 14. For example, he states that "Asplundh management regularly participates in illicit activities." *Id.* at ¶ 7. Those include omitting safety issues from written reports, overcharging customers, and permitting sexual harassment or other wrongful treatment. *Id.* The only evidence Snethen provides for this assertion is his own conclusory statement in a declaration that Asplundh regularly engages in these activities. 38 at ¶ 7 (citing Doc. 38-2 at ¶ 8); *see Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1095 n.2 (10th Cir. 2010) (noting that a conclusory and self-serving affidavit does not create a factual dispute). In any event, Snethen has provided no explanation as to how his allegations of lapses in business ethics are related to Asplundh's decision to promote Lehmann instead of him or how they would otherwise suggest age-related animus such that his case should proceed to trial. *Turner*, 563 F.3d at 1144–45 (finding that general allegations about an employee's work environment that were unrelated to the employment decision or the decisionmaker at issue were insufficient to support a finding of pretext).

### III

For the foregoing reasons, Asplundh's Motion for Summary Judgment, Doc. 34, is GRANTED.

It is so ordered.


Date: September 30, 2025          s/ Toby Crouse
                                  Toby Crouse
                                  United States District Judge